UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT INDUSTRIES, LTD. d/b/a
SUPERIOR HANDFORGE,                                             Case No.

           Plaintiff,                                             Hon.

v.

NSF INTERNATIONAL STRATEGIC
REGISTRATIONS LTD.,

           Defendant.
_____

Jennifer Z. Belveal (P54740)
Nicholas J. Ellis (P73174)
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
jbelveal@foley.com
nellis@foley.com

D. Scott Carlton (*application
for admission to be filed*)
Paul Hastings LLP
scottcarlton@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Plaintiff
Albert Industries, Ltd. d/b/a Superior Handforge

_____

**COMPLAINT AND JURY DEMAND**

Plaintiff Albert Industries, Ltd. d/b/a Superior Handforge ("Superior Handforge" or "Plaintiff"), by and through its attorneys, states the following for its Complaint and Jury Demand against Defendant NSF International Strategic Registrations Ltd. ("NSF" or "Defendant"):

## INTRODUCTION

1. Superior Handforge brings this action to redress intentional and tortious wrongful conduct by NSF, a third-party certification body, in immediately and improperly suspending critical certifications Superior Handforge is contractually required to maintain in order to do business with the majority of its customers. The immediate suspension of Superior Handforge's certifications is the result of a significant miscommunication and misunderstanding that NSF is unwilling to address to resolve this issue. The suspension of NSF's certifications has had, and will continue to have, devastating consequences on the Plaintiff's business, and if left in place for any material time, will likely lead to the shutdown of the business.

2. During a surveillance audit necessary to maintain Superior Handforge's certifications, a contract auditor for NSF unilaterally decided to "terminate" the audit putatively because not enough Superior Handforge personnel were available to be interviewed for purposes of the audit (even though on the day of termination, those employees were in fact available and the auditor had been told so). The audit occurred in the midst of a declared outbreak of respiratory illness in the area, and

Superior Handforge personnel were temporarily unavailable due to illness, which the auditor was informed of. The next day, the NSF auditor refused to continue the audit despite being advised that the relevant personnel were back at work and available for the audit interviews.

3. At this time, Superior Handforge reasonably understood the audit to be "discontinued" (not "terminated") by the auditor until the audit could be rescheduled for completion. However, on information and belief, in NSF's view, the audit was "terminated," rather than discontinued, and the consequence of terminating the audit was the immediate suspension of Superior Handforge's contractually required certifications, and an inability to reinstate the certification until completion of the audit by NSF. The auditor never clearly communicated to Superior Handforge the consequences of NSF's unilateral decision to terminate the audit. There was no reference of a suspension to any Superior Handforge personnel, nor was there any communication in writing detailing this severe consequence.

4. Superior Handforge was not informed of the immediate suspension of its certifications until December 7, 2022, over *three weeks* after the purportedly terminated audit. Upon learning of the suspension of its certifications, Superior Handforge immediately contacted NSF seeking to correct the misunderstanding and seeking to have the suspension of its certifications withdrawn while it worked with NSF to resolve any issues. Superior Handforge also detailed the immediate,

irreparable harm to Superior Handforge's business that NSF's unwarranted suspension was causing.  Because many of Superior Handforge's supply agreements with customers require the suspended certifications, it is now and will remain unable to ship and invoice completed goods, and therefore, unable to satisfy its contractual obligations to customers.  Despite being informed of the irreparable and devastating injury Superior Handforge is incurring to its business, NSF declined to work with Superior Handforge to resolve the issue which left Superior Handforge with no other choice but to file this lawsuit.  Superior Handforge is entitled to preliminary and final injunctive relief prohibiting NSF from suspending Superior Handforge's certifications and allowing for the completion of its audit on an expedited basis.  Superior Handforge is also entitled to an award of compensatory damages against NSF due to NSF's tortious interference with Superior Handforge's contractual relations and business relationships.

## PARTIES

5.      Plaintiff Superior Handforge is a California corporation, with its principal place of business at 9910 Jordan Circle, Santa Fe Springs, California, 90670, United States of America.  Superior Handforge specializes in manufacturing aluminum open-die hand forgings for the aerospace, military, defense, automobile, semiconductor, nuclear, and space industries.

6. Defendant NSF is Michigan corporation, with its registered office and principal place of business at 789 N. Dixboro Road, Ann Arbor, Michigan, 48105, United States of America. NSF facilitates the development of public health standards and utilizes service teams to test, audit and certify products and services. NSF certification assures consumers, retailers and regulators that certified products have been rigorously tested to comply with all standard requirements.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1332 because the Plaintiff is a citizen of California, and the Defendant is a citizen of Michigan (diversity of citizenship). The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. In addition, the parties' agreement specifies that "[a]ny legal action relating in any way to the Agreement shall be brought and maintained exclusively in the State of Michigan and the parties consent to exclusive personal jurisdiction and venue in all such courts."

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## GENERAL ALLEGATIONS

9. Superior Handforge specializes in manufacturing aluminum open-die hand forgings for the aerospace, military, defense, automobile, semiconductor, nuclear and space industries. Superior Handforge's products have primary

application to the aerospace industry in both the commercial and defense markets. Since Superior Handforge is primarily focused on aerospace materials production, its customers contractually require it to be AS9100 and ISO 9001 certified. ISO 9001 sets quality management principles for both service and manufacturing organizations. AS9100 is an international aerospace standard that specifies requirements for a quality management system and demonstrates that a company's products meet all customer requirements and applicable statutory and regulatory requirements. The purpose and function of the ISO standard, which these certifications derive from, is continuing improvement in quality control.

10. Many customers in the aerospace industry require both ISO 9001 and AS9100 certification as a condition of doing business with them. Indeed, Superior Handforge is required to maintain these certifications under the terms of its supply agreements with various aerospace customers, who make up a predominant amount of their business. In fact, Superior Handforge is prevented from issuing invoices and shipping products to customers without the NSF certification.

11. In order to receive ISO 9001 and AS9100 certifications, manufacturing companies utilize accredited third-party certification bodies like NSF. NSF audits the processes and procedures of a company's quality management system to determine if they meet the requirements of ISO 9001 and AS9100. Once certification is received, a company is then required to maintain compliance with the

requirements of the ISO 9001 and AS9100 standards, which is verified by periodic NSF surveillance audits. It is typical in any audit that areas of improvement will be identified, and corrective action plans prepared, submitted, approved, and implemented. Indeed, the ISO standard contemplates exactly such a process, and companies with certifications work on that basis. Under the general terms and conditions of the agreement between NSF and Superior Handforge, and specifically Paragraph 3, NSF was required to perform services "in a reasonable and workmanlike manner."

12. On or around July 7, 2022, Superior Handforge entered into a contract for an audit. The contract consisted of NSF's quotation and NSF's general terms and conditions, were are incorporated by the quotation.

13. NSF scheduled a three-day surveillance audit to occur on November 14-16, 2022 in order to determine whether Superior Handforge was maintaining compliance with the requirements for ISO 9001 and AS9100 certification.

14. On November 15, 2022, the second day of the audit, in the midst of a declared outbreak of respiratory virus in the area, four Superior Handforge employees called in sick and were unable to attend work. As a result, these individuals were not available that day for the NSF auditor to interview. At this time, Superior Handforge was dealing with high levels of illness among its employees due to an influenza outbreak and RSV outbreak in the region where

Superior Handforge is located in Southern California. In addition, this audit occurred in the wake of the COVID-19 pandemic. In light of instructions from local health authorities, Superior Handforge reasonably requested personnel experiencing flu-like symptoms to remain at home. The confluence of COVID-19, RSV, and influenza infections resulted in a surge of employee absences.

15. During the course of this audit, after being unable to interview certain individuals who were out sick, the auditor informed Superior Handforge that NSF had unilaterally decided to terminate the audit (although, at the time, Superior Handforge understood NSF to discontinue the audit until it could be rescheduled).

16. On November 16, 2022, the third scheduled day of the audit, the NSF auditor arrived at Superior Handforge for a closing meeting. Superior Handforge informed the auditor that representatives that each of the absent employees from the previous day was back at work and available for audit interviews. However, the NSF auditor refused to continue the audit and reiterated NSF's decision to unilaterally terminate the audit.

17. At the time, the NSF auditor did not give any indication that the termination of the audit would result in an immediate suspension of Superior Handforge's AS9100 and ISO 9001 certifications. Superior Handforge understood the audit to be discontinued by the auditor until the audit could be rescheduled for completion. There was absolutely no reference to a suspension in any discussion

with the NSF auditor, including in the closing meeting, and no communication in writing to Superior Handforge setting forth this consequence.

18. Ceasing the audit as a result of absences due to illness was not "reasonable" under Paragraph 3 of the general terms and conditions of the agreement between NSF and Superior Handforge, and was inconsistent with NSF's obligation to implement its contractual requirements in good faith.

19. Prior to termination of the audit, the NSF auditor identified seven instances of purported nonconformity, three major issues and four minor issues. These nonconformities were entered into the Oasis System, the primary source for customers to check the ISO certifications of their suppliers. NSF set a December 15, 2022 deadline to obtain preliminary corrective action plan approvals to address these nonconformities and noted in the Oasis System that, NSF "shall initiate the client certification suspension process when an organization fails to demonstrate that conformance to the applicable standard has been reestablished within 60 days from the issuance of a nonconformity report."

20. Superior Handforge took immediate action to address the alleged noncomformities and submitted corrective actions and preliminary corrective action plans for each nonconformity prior to the December 15, 2022 deadline. As of this filing, all seven of the preliminary corrective action plans have received approval and have been or are being implemented. The timing of the company's submissions

and NSF's responses is consistent with both parties acting on the basis of a continuation of the audit in the ordinary course.

21.  Despite Superior Handforge acting immediately to address the alleged nonconformities, on December 7, 2022, NSF indicated in a letter ("Suspension Letter") to Superior Handforge that NSF purported to "process[] for 'suspension'" Superior Handforge's certification status under AS9100 and ISO 9001 based on claimed "performance issues" identified during the surveillance audit on November 14-16, 2022.  The letter relied on the alleged noncomformities and stated that in order to have the suspension lifted, Superior Handforge needed "an additional on-site visit to complete the terminated audit" and address the purported nonconformities.

22.  After receiving the Suspension Letter, Superior Handforge immediately reached out to NSF to understand why its AS9100 and ISO 9001 certifications had been suspended, the basis for the suspension, and why the suspension was not communicated at the audit closeout meeting.  Although the Suspension Letter purported to rely on the nonconformities, subsequent conversations with NSF representatives confirmed that the immediate suspension of Superior Handforge's AS9100 and ISO 9001 certifications was a result of the termination of the audit due to Superior Handforge's inability to provide sufficient personnel to be interviewed for purposes of the audit.

9

23. Superior Handforge implored NSF to withdraw the suspension of its certifications, while providing Superior Handforge the opportunity to work with NSF to resolve any issues. Superior Handforge also detailed the significant and immediate harm it was facing if the situation was not remedied.

24. Since many of Superior Handforge's supply agreements with customers require AS9100 and ISO 9001 certifications, it is unable to ship and invoice completed goods. As a result, Superior Handforge is unable to satisfy its contractual obligations to customers and end-users in the aerospace supply chain. NSF's unwarranted suspension results in Superior Handforge customers being unable to accept products that are otherwise conforming and proper. Indeed, NSF's improper suspension has already placed Superior Handforge in potential violation of existing purchase orders and caused customers to reject delivery. Additionally, Superior Handforge is unable to enter into any supply agreements with prospective customers because such agreements would contractually require it to be AS9100 and ISO 9001 certified. Despite the irreparable injury to Superior Handforge's business, NSF declined to withdraw the suspension.

25. On December 12, 2022, Superior Handforge received a communication from PRI.org informing it that its National Aerospace and Defense Contractors Accreditation Program ("NADCAP") certification is under threat of suspension due to NSF's suspension of Superior Handforge's AS9100 and ISO 9001 certifications.

NADCAP certification is related to laboratory testing and heat treatment of finished hand forgings.  A lack of valid AS9100 and ISO 9001 certifications results in an automatic failure of a NADCAP review.  The loss of either or both NADCAP certifications (for lab testing or heat treatment) will result in significant financial damage to Superior Handforge because it will no longer be able to provide these services in-house.

26. If the Certifications are not reinstated, Superior Handforge will be forced to cease operations and commence a wind-down of the company.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(*Tortious Interference with Contractual Relations*)

27. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

28. Plaintiff has contractual relationships with customers, including customers in the aerospace industry.

29. Defendant is aware of these contractual relationships.

30. Defendant is not a party to these contractual relationships.

31. Defendant intentionally and improperly interfered with these contractual relationships by immediately suspending Plaintiff's AS9100 and ISO 9001 certifications.

32. Defendant's actions have disrupted performance of Plaintiff's contracts with customers because it is unable to ship and invoice completed goods due to the suspension of Plaintiff's AS9100 and ISO 9001 certifications, which are required by Plaintiff's supply agreements.

33. Defendant unjustly instigated the disruption of the contracts by immediately suspending Plaintiff's AS9100 and ISO 9001 certifications because Plaintiff's personnel were temporarily unavailable for audit interviews due to illness.

34. Defendant's intentional and improper conduct was and is *per se* wrongful or was done without justification and for the sole purpose of interfering with Plaintiff's contractual relationships.

35. Plaintiff has suffered damages as a proximate result of Defendant's unjustified disruption of the contracts in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
(*Tortious Interference with a Business Relationship or Expectancy*)

36. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

37. Plaintiff has valid business relationships and expectancies with its customers and prospective customers.

38. These business relationships and expectancies have a reasonable likelihood of future economic benefit to Plaintiff.

39. Defendant was aware of these business relationships and expectancies given its role as a third-party certification body.

40. Defendant intentionally and improperly interfered with, and will intentionally and improperly interfere with, these business relationships and expectancies through its unwarranted suspension of Plaintiff's AS9100 and ISO 9001 certifications.

41. Defendant's improper conduct induced a breach or termination of Plaintiff's business relationships and expectancies.

42. Defendant's intentional and improper conduct was and is *per se* wrongful or was done without justification and for the sole purpose of interfering with Plaintiff's business relationships and expectancies.

43. Plaintiff has been, and will continue to be, injured by Defendant's intentional and improper acts of tortious interference.

## THIRD CAUSE OF ACTION
(*Breach of Contract – Specific Performance*)

44. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

45. Under the general terms and conditions of the agreement between NSF and Superior Handforge, and specifically Paragraph 3, NSF was required to perform services "in a reasonable and workmanlike manner."

13

46. Plaintiff has substantially performed all of its duties and obligations under the agreement between NSF and Superior Handforge.

47. Defendant has breached the agreement between NSF and Superior Handforge by failing to perform services in a "reasonable and workmanlike manner" by prematurely terminating the audit because Plaintiff's personnel were temporarily unavailable for audit interviews due to illness.

48. If Plaintiff is not provided services in a "reasonable" manner, which would allow for the completion of Plaintiff's audit, Plaintiff will be irreparably harmed through the loss of its AS9100 and ISO 9001 certifications. Since many of Superior Handforge's supply agreements with customers require AS9100 and ISO 9001 certifications, it will be unable to ship and invoice completed goods. As a result, Superior Handforge will be unable to satisfy its contractual obligations to its customers and end-users in the aerospace supply chain or enter into any supply agreements with prospective customers.

49. Plaintiff, therefore, has no adequate remedy at law in that Plaintiff will be deprived of its negotiated contractual obligation to receive Defendant's services in a "reasonable" manner, resulting in irreparable harm to Plaintiff.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff respectfully demands a jury trial and prays for judgment against Defendant as follows:

1. For a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendant from suspending Plaintiff's AS9100 and ISO 9001 certifications and allow for the completion of Plaintiff's audit on an expedited basis;

2. For specific performance of Defendant performing its contractual obligations in a reasonable and workmanlike manner;

3. For an award of attorneys' fees associated with this action; and

4. Such other and further relief as this Court deems to be just and proper.

Respectfully submitted,

Dated: December 16, 2022

**FOLEY & LARDNER LLP**

/s/ Nicholas J. Ellis
Jennifer Z. Belveal (P54740)
Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
jbelveal@foley.com
nellis@foley.com
D. Scott Carlton (*application for admission to be filed*)
Paul Hastings LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
(213) 683-6000
scottcarlton@paulhastings.com

Attorneys for Plaintiff